## TUNSTILL v. PACIFIC MID–CONTINENT CORPORATION.

### No. 3970.

Court of Civil Appeals of Texas. El Paso.
July 11, 1940.

G. G. Tunstill and Richard Owens, both of Fort Worth, for appellant.

Hubbard & Kerr, of Pecos, for appellee.

WALTHALL, Justice.

In this appeal appellant, Tunstill, complains of the action of the District Court of Reeves County in overruling his plea of privilege to be sued in Tarrant County, the county of his residence.

Appellee, Pacific Mid-Continent Corporation, a foreign corporation, having a permit to do business in the State of Texas, brought this suit, as plaintiff, against appellant, W. A. Tunstill, as defendant, to remove cloud from its title to the oil and gas lease on land in Reeves County, Texas, and fully described in its petition as covering the north half of section 10, block 56, township 2 north, Texas & Pacific Railway Company survey, Reeves County, Texas, containing 320 acres, more or less; the lease alleged to be for a primary term of five years, and vested in the lessee and assigns the exclusive right to go upon said premises and develop the same and mine and operate for oil and gas; appellee also sued for actual and exemplary damages in the several amounts specified, for costs and for relief as to which it may be entitled. It is alleged that the lease emanated from E. B. Busby, lessee of the State, and came to appellee from Busby by proper mesne conveyances; that appellee is the owner and holder of said lease which was, at all times complained of, in force and effect; that appellee had the exclusive right to develop the lease and to drill wells for oil and gas thereon, and to such depths as appellee deemed expedient, without interference upon the part of appellant.

That, acting under the terms of the lease, appellee, on July 30, 1938, spudded a well for oil and gas on said lease and drilled same to a depth of 3,315 feet, to which depth neither oil nor gas in commercial quantities was discovered in said well.

On April 1, 1939, appellee entered into a written agreement with Tide Water Association Oil Company, a corporation, whereby said Company agreed with appellee to deepen said well to a depth of 3,342 feet and so much deeper as said Company may desire; that in pursuance of said agreement Tide Water Association immediately began deepening said well to a depth of 3,556 feet until April 6, 1939. The petition then alleged the following, which statement we think to copy here: "The defendant (appellant) conversed with said Company's authorized agent, servant and employee, W. E. Thompson, at Midland, County of Midland, State of Texas; that in said conversation the defendant then and there gave notice to the Company that he was the landowner of the aforesaid land, upon which the Company was then and there deepening the aforesaid oil well, and that he, the defendant herein, in a threatening manner and tone of voice, had an agreement in writing with plaintiff whereby plaintiff agreed that in deepening of said well it would not deepen said well to a greater depth than fifty feet below the depth of 3,315 feet, and that in the event that said Company deepened said well to a greater depth, and by so doing allowed any water to infiltrate into said well or formation or injured said well in any particular, that then and in that event he would immediately institute suit against

said Company for a large sum of damages, and that he would hold the Company liable for trespass and for the ruination of said property, and that the Company had no right whatever to be there upon said ground without his, the defendant's, consent first had and obtained, which he had at no time given said Company; and that if he, the said W. E. Thompson, or the Company, did not know about said written agreement with said plaintiff with reference to the deepening of said fifty feet, that he was then and there placing them upon notice with reference thereto."

Plaintiff then alleges that prior to the above conversation the Tide Water Association Oil Company had deepened said well to a depth of 3,556 feet, and had made its election, and had so notified the plaintiff, that it would deepen said oil well to at least a depth of 3,750 feet unless oil, gas or water was encountered at a less depth, and that at said time it was then deepening said well; that because of said threats, claims, demands and statements made by defendant, and solely by reason thereof, the said Company advised plaintiff that it would not so deepen the well, and that it was then revoking and rescinding its election to deepen the well to 3,750 feet, but would, in place and stead, immediately plug the well back to 3,315 feet.

Plaintiff's petition then alleges that all of the aforesaid statements, threats and claims made by defendant to Thompson, as copied above, were false and untrue, and were known to be false and untrue by defendant, and were then maliciously and wantonly made with intent, purpose and design to intimidate said Company and to cause said Company to cease and desist its deepening operations; and that the Company did cease and desist from any further deepening operations on said property in furtherance of said contract between said Company and plaintiff, to plaintiff's damage as stated.

Plaintiff alleged the nature and amount of its several items of damages, which we omit to state.

Plaintiff pleaded in detail and at much length other facts not necessary to state at length here. In substance, pleaded that by the terms of the agreement of April 1, 1939, it was within the option and election of the Company as to what depth it would deepen said well, but that it was the mutual desire and intention of the Company and plaintiff to deepen the well to such depth as to discover and develop oil or gas in commercial quantities, and that but for said acts of defendant the Company would have continued deepening the well; alleged that defendant did not have any rights in said oil and gas lease, except to receive one-sixteenth of the oil and gas produced as royalty; that by reason of defendant's conversation with Thompson defendant has cast a cloud on plaintiff's title to the oil and gas lease, and that through and by reason of said conversation defendant's "said acts constituted trespass on plaintiff's said property, to-wit, the said well on said land, to plaintiff's great damage as hereinbefore alleged; that by reason of said trespass on said property so committed by the defendant, and the defendant's assumption of management and control of the drilling of plaintiff's said well, defendant has slandered the title of plaintiff's said lease and his fee title to the oil and gas in and under said land."

Appellant's plea of privilege to be sued in Tarrant County is in the usual form of such pleas, and is sufficient to tender the issue of venue.

Appellee, in answer to the plea, filed its controverting affidavit, in which it refers to its original petition and the facts therein alleged, the execution and delivery of the oil and gas lease on the land involved, and the rights asserted therein and by said lease vested in appellee and his assigns, and that by proper transfers appellee is now, and at all times has been, the owner of said property and of the exclusive right therein given to develop the property and to drill wells thereon for oil and gas to such depths as appellee might deem expedient, without interference upon the part of appellant.

Appellee then alleges, substantially as in the petition, that about April 6, 1939, appellant unlawfully interfered with appellee in the enjoyment of the exclusive right granted under said oil and gas lease and its mesne assignments and transfers, and interfered with the appellee's operation of said lease, and by the acts of appellant, as alleged in the petition, unlawfully cast a cloud upon appellee's title to the oil and gas leasehold herein involved and damaged appellee, "all as is more fully shown by appellee's original petition, which said original petition and the allegations thereof are here specially referred to and herein adopted, and by this controverting plea appellee adopts the allegations of said original petition and makes the same a part

hereof for all purposes, and appellee verifies the facts alleged in said petition herein filed, and says that the same are true and correct."

The controverting plea alleges that this is a suit to recover damages for clouding title and to remove an incumbrance upon title to land and to remove cloud from title and to quiet title of this appellee to the oil and gas leasehold hereinbefore described, which said leasehold is situated in Reeves County, Texas.

The controverting plea, continuing, alleges: "Appellee (plaintiff) further says that, as shown by the petition heretofore filed herein and adopted and made a part of this controverting plea, this is a suit to recover damages for and based upon a trespass against real property situated in Reeves County, Texas, and for resulting damages for unlawful interference with the exercise of the rights and privileges appurtenant to said real properties therein described."

Appellant offered no evidence on the hearing of the plea of privilege.

Appellee showed the location of the land involved to be in Reeves County.

W. E. Thompson, a witness for appellee, testified: Lived in Midland, Texas; was district land man for the Tide Water Association Oil Company, and was at the times referred to; his employer Company took over and was deepening a well that was at the time referred to being drilled; on April 6, (1939) "we stopped drilling"; witness had a long distance call that morning from Mr. Tunstill in Fort Worth; the man that was talking over the telephone asked "what we were doing with the well," and witness, replying, said, "Drilling it"; the man talking said, "The well on my land in Reeves County?" Witness, replying, said, "We are drilling it deeper"; he said, "What are you going to do with show above?" Witness said, "I don't know, it wasn't a commercial show, I didn't think, and we are going to drill on down." "He said, 'I am calling to tell you if you drill the well deeper and ruin the upper well, I will institute suit,' and I told him that I didn't know anything about law, or anything like that, but that was the first time a lessor ever told us what we could do with a well that we took over to drill." Witness, further testifying, said: "In the conversation he (Tunstill) said: 'If you take that well into water and ruin that upper show, why, I am going to institute suit against you.'"

Witness said he got in touch with the production superintendent and told him to shut the well down, and "we stopped drilling it and plugged to 3,315, I think." Witness identified a copy of a written contract his Company had with appellee to deepen the well, and said that but for the conversation he had with Tunstill, he would, under the contract, have deepened the well.

Appellee offered its lease to the land in controversy in evidence; also appellee's original petition, and the agreement between appellee and the Tide Water Association Oil Company to deepen the well, and other instruments made exhibits in the case, which we think we need not refer to.

The court, after hearing the evidence, overruled appellant's plea of privilege, and appellant duly perfected this appeal.

Appellant submits several assignments of error, and refers to appellee's petition claiming venue of the suit in Reeves County on the ground that the suit was to remove a cloud on the title to real estate, and that the suit involved a trespass to land.

Appellee in its brief said: "We believe there is but one question herein presented to be decided by this Court, and that is whether the acts (of appellant) complained of constitute a trespass in Reeves County, Texas, under subdivision 9 of Article 1995. So believing we present counter propositions" as indicated.

We, therefore, will consider on this appeal appellant's assignments relating to the issue of trespass only.

The identity of appellant by the witness W. E. Thompson as the person who called him at Midland, Texas, over long distance telephone from Fort Worth, Texas, and had the conversation with the witness detailed above, was established with reasonable certainty we think. Such identity was an issue of fact, and was necessarily determined by the trial court.

The issue for determination by this court upon the plea of privilege and the controverting affidavit being whether or not the evidence shows a trespass upon the property in Reeves County. The issue of title to the property was incidentally involved only, and we think the admission, over objection, in evidence of the deed records showing the copies of the oil and gas lease and the several assignments of the lease from Busby to appellee does not show reversible error.

We are not discussing the issue of removing cloud from title on real estate.

The only issue we think necessary to discuss is whether the telephone conversation between appellant and Thompson, detailed in the above statement of the evidence of Thompson, shows a trespass by appellant on the land in Reeves County, the evidence not showing a physical invasion of the property by appellant.

In discussing the question, and in stating our view of the question presented, we will assume that appellee, through its oil and gas lease, had a right to drill the well for oil and gas on the land, and that by reason of what appellant said to Thompson, was thereby prevented and interrupted and did not drill further on the well, but abandoned further drilling and plugged the well back to what appellant stated it should be.

 It has been said that a trespass within the meaning of subdivision 9 of Revised Civil Statutes, Article 1995, includes injuries to persons or property resulting from wrongful acts, either wilfully inflicted or the result of affirmative, active negligence upon the part of the wrongdoer (Mays v. Smith, Tex.Civ.App., 95 S.W.2d 1342; Coleman v. White, Tex.Civ.App., 95 S.W.2d 1018; and cases referred to under 13, par. 22, 43 Tex.Jur. p. 735), as distinguished from injuries that are the result of a mere omission of duty.

The acts of appellant complained of here might be a trespass on the right of appellee to carry out its contract to deepen the well on the land, but not on the land itself. Appellant threatened suit if the well was deepened; the threat caused the work to be discontinued.

When the threat was made appellant was in Tarrant County, and Thompson, to whom the threat was made, was in Midland County. The whole conversation, including the threat, had its application and effect upon appellee's right to dig the well on the land in Reeves County. Appellant, at the time of the conversation, was not in Reeves County.

To sustain venue in a county other than that of appellant's residence in the action based on trespass on land, the plaintiff (appellee here) must show that the act complained of was committed in the county where the suit is pending, in this instance Reeves County, and that the act was of such a nature as to constitute a trespass. Waco Cotton Oil Mill v. Walker, Tex.Civ. App., 103 S.W.2d 1071; Jarvis-Tull & Co. v. Williams, Tex.Civ.App., 114 S.W.2d

1218; Lee v. Caldwell, Tex.Civ.App., 125 S.W.2d 619, in which cases it was said that proof of the fact of the commission of the trespass is as essential as proof of the place where it was committed.

In general, trespass on realty is an unlawful entry upon another's possession and with force. 63 C.J. 893, par. 11. The act causing injury to the realty of another, whether directly or indirectly, is a trespass. But to sustain the venue by the terms of the invoked exception, it must be shown that such alleged trespass took place in Reeves County.

We have concluded that under the evidence and the facts as pleaded, the District Court of Reeves County did not have jurisdiction to try the case under subdivision 9 of Article 1995 of the Revised Civil Statutes, and that the court was in error in overruling appellant's plea of privilege.

The case is reversed and remanded with direction that the case be transferred to the District Court of Tarrant County for trial on the merits.